**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRINIDAD LEDESMA, | Case No. EDCV 19-1686-FMO (JPR) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| VASILE CRASNEAN, Registered Nurse, | |
| Defendant. | |

On September 4, 2019, Plaintiff Trinidad Ledesma, a former state prisoner at the California Rehabilation Center proceeding pro se, filed a civil-rights action under 42 U.S.C. § 1983. He was subsequently granted leave to proceed in forma pauperis. He sues Vasile Crasnean, a registered nurse at CRC,[1] alleging that he was deliberately indifferent to Plaintiff's serious medical needs.[2]

---

[1] Because Plaintiff does not indicate the capacity in which he sues Defendant but seeks damages, the Court presumes that it is in his individual capacity. See Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1984).

[2] On December 28, 2015, Plaintiff, proceeding pro se, sued Defendant, among others, for the same alleged constitutional

1

After screening the Complaint under 28 U.S.C. § 1915(e)(2), the Court finds that its allegations fail to state a claim on which relief might be granted. Because at least some of its claims might be cured by amendment, the Complaint is dismissed with leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that pro se litigant must be given leave to amend complaint unless absolutely clear that deficiencies cannot be cured). If Plaintiff desires to pursue any of his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed below.

## ALLEGATIONS OF THE COMPLAINT

On September 30, 2015, Plaintiff, at that time a state prisoner at CRC assigned to work as a dorm porter, dropped a five-gallon bucket filled with water on his right foot. (Compl. at 2-3.) The bucket tore the nail off of his big toe and caused the toe to "swell[]" and "turn[] blue." (Id. at 3; see id. at 6-7.) When Plaintiff reported to the medical unit, Defendant, a registered nurse, "looked at the injury" and issued a "three day lay-in" — a three-day exemption from work. (Id. at 4; see id.,

---

violation claimed here. See Compl., Ledesma v. Cal. Rehab. Ctr., EDCV 15-2638-FMO (JPR) (Dec. 28, 2015), ECF No. 1. That lawsuit was dismissed without prejudice on May 10, 2016, for failure to state a claim and failure to prosecute. See Order Dismissing Action, id., ECF No. 12.

Ex. C at 27[3] (lay-in order).)[4] No "further care or treatment" was provided that day. (Compl. at 4.) The next day, October 1, Defendant "summoned" Plaintiff back to the medical unit without sending somebody to pick him up in a wheelchair. (Id.) After looking at his foot, Defendant give him a "band-aide [sic] and [a] bottle of aspirin" and ordered that x-rays be taken "in a couple of days." (Id.)[5]

After the three-day lay-in had expired, Plaintiff was still in pain and had not yet had x-rays taken or been seen by a doctor. (Id. at 5.) He wrapped a "make-shift" bandage around his foot and returned to work. (Id.; see id. at 6.) In the ensuing months, he submitted multiple requests for additional medical care. (Id. at 5, 12.) Between October and December 2015, he submitted three "Health Care Services Request Form[s]," complaining that he was still in significant pain, was being forced to work while hurt, and had not yet had x-rays taken or been seen by a doctor. (Id., Ex. F at 42-43, 45.) Plaintiff claims that Defendant "screen[ed]" these complaints (Compl. at

---

[3] Because the exhibits attached to the Complaint are not separately paginated, the Court uses the pagination generated by the official Case Management/Electronic Case Filing system.

[4] The lay-in order, which Plaintiff has attached to the Complaint, appears to be for four days — from 5:45 p.m. on September 30 to 4:30 p.m. on October 4 — not three. (See Compl., Ex. C at 27 (lay-in order).) And although Plaintiff alleges that Defendant authorized the lay-in, the order appears to be signed by two registered nurses; the signatures are not entirely legible, but neither appears to be Defendant's. (See id.)

[5] Plaintiff has attached to the Complaint an x-ray order dated September 30, apparently signed by the same registered nurses who authorized the three-day lay-in. (See Compl., Ex. C at 27 (x-ray order).)

3

12), but they were not addressed to him and he was not mentioned in them (see id., Ex. F at 42-53). On November 1, 2015, he reiterated his concerns in a written complaint to the "Facility Business Manager," and on November 12, he sent a letter to CDCR's Office of Internal Affairs, reporting that "[m]edical [o]fficials at CRC" were deliberately disregarding his medical needs on the warden's orders; he did not mention Defendant in either communication. (Id., Ex. F at 40, 44.)

On December 2, 2015, Plaintiff saw Defendant to get eyeglasses. (Compl. at 4.) He asked Defendant why x-rays of his foot had not yet been taken and explained that he was still in pain. (Id.) Defendant replied, "You are here for your eyes, I'm not concerned with your foot, I'm here to hear about your eyes"; he then allegedly asked Plaintiff to leave. (Id. at 4-5.) Two days later, on December 4, "Dr. Pima" ordered x-rays. (Id. at 12; see id., Ex. D at 30-31.) The x-rays, which were apparently taken that same day, revealed that his foot was not broken, although Plaintiff apparently later told a doctor that a radiology tech had told him that it was. (See id., Ex. D at 30-31.)

Plaintiff continued to file health-care request forms to the medical unit, disagreeing with the conclusion that his foot was not broken and maintaining that he was in "extreme pain" and wrongly being forced to work. (Compl. at 5-6; see id., Ex. F at 46-53.) He also addressed complaints to that effect to "Chief Medical Officer Maxwell" and "Dr. Pima." (Id., Ex. F at 52-53.) He claims that none of these were responded to. (Compl. at 5.)

Once he was paroled, in "Spring of 2016" (id., Ex. D at 30),

4

Plaintiff pursued additional treatment, having "fusion" surgery on his toe in September 2017 (Compl. at 9; id., Ex. D at 30). He then applied for disability benefits, claiming that he could not perform his past work as a heavy-truck driver because of the injuries he sustained to his right foot. (Compl. at 8; see id., Ex. D at 29-37.) According to the doctor who evaluated him for disability eligibility, the treatment he received while incarcerated was "incomplete" and x-rays "should have been taken within the first few days at most." (Id., Ex. D at 31.) When they were "finally taken 9 weeks later, any acute fracture was in all medical probability already healed," and the "chronic injury left" was all that was reflected. (Id.; see also Compl. at 4.) She opined that the "treatment delay may have worsened the outcome." (Compl., Ex. D at 35; see Compl. at 7-8.)

Plaintiff seeks $1.1 million in compensatory and punitive damages for "past, present, and future" physical and mental suffering, loss of wages, and "permanent disability and disfigurement." (Compl. at 17-18.)

**STANDARD OF REVIEW**

A complaint may be dismissed as a matter of law for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010) (as amended) (citation omitted); accord O'Neal v. Price, 531 F.3d 1146, 1151 (9th Cir. 2008). In considering whether a complaint states a claim, a court must generally accept as true all the factual allegations in it. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Hamilton v. Brown,

630 F.3d 889, 892-93 (9th Cir. 2011). The court need not accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); see also Shelton v. Chorley, 487 F. App'x 388, 389 (9th Cir. 2012) (finding that district court properly dismissed civil-rights claim when plaintiff's "conclusory allegations" did not support it).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted); Byrd v. Phx. Police Dep't, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam).

**Plaintiff Fails to State an Eighth Amendment Claim**

I. Applicable Law

Plaintiff was a state prisoner at the time of the alleged deprivation and so his deliberate-indifference claim is properly analyzed under the Eighth Amendment's Cruel and Unusual Punishments Clause. See Castro v. Cnty. of L.A., 833 F.3d 1060,

6

1067 (9th Cir. 2016) (en banc). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the government's obligation to provide medical care to prisoners. Estelle v. Gamble, 429 U.S. 97, 103 (1976). To establish a constitutional claim based on inadequate medical care, a plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. Id. at 104. A "serious" medical need exists when failure to treat the plaintiff could result in "further significant injury" or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing Gamble, 429 U.S. at 104), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 F.2d at 1059). The defendant must have purposefully ignored or failed to respond to the plaintiff's pain or medical needs. McGuckin, 974 F.2d at 1060. An inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care, or a difference of opinion over proper medical treatment are all insufficient to violate the Eighth Amendment. See Gamble, 429 U.S. at 105-07; Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Even medical malpractice or gross negligence does not by itself establish deliberate indifference to serious medical needs. See Gamble, 429 U.S. at

106; Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("mere malpractice, or even gross negligence, does not suffice" to show Eighth Amendment violation).

II. Analysis

The Complaint's allegations are insufficient to state a colorable deliberate-indifference claim against Defendant. To be sure, Plaintiff likely has adequately alleged that he suffered a serious injury to his right foot, that the treatment he received while incarcerated was "incomplete," and that the "delay" in receiving treatment may have exacerbated the injury. (Compl. at 3, 6-7, 12; id., Ex. D at 31, 35.) But he has failed to allege that any inadequacy or delay in treatment was caused by Defendant's deliberate indifference.

To start, Plaintiff acknowledges that when he reported to the medical unit immediately after injuring his toe, Defendant authorized a three-day lay-in, excusing him from work. (Compl. at 4.) Defendant then proactively sought him out the next day, providing him with a band-aid and painkillers and ordering that x-rays be taken. (Id.) Thus, his own allegations reflect that Defendant swiftly undertook to treat his injury. See Jackson v. Paramo, No. 17CV882-CAB (BLM), 2018 WL 4952596, at *11 (S.D. Cal. Oct. 12, 2018) (holding that plaintiff did not adequately allege that defendant was deliberately indifferent given allegations that he referred him for x-rays and further treatment), accepted by 2018 WL 5919676 (S.D. Cal. Nov. 9, 2018); cf. Rich v. Stratton, No. 2:17-cv-0432 DB P, 2019 WL 2339533, at *5 (E.D. Cal. June 3, 2019) (holding that defendants' "refusal to refer [plaintiff] for an x-ray or an MRI does suggest deliberate

indifference as it shows that they failed to act despite knowledge of a substantial risk of harm").

And even if Defendant should have sent someone with a wheelchair to bring Plaintiff to the medical unit the day after the incident, taken additional steps to treat his injury, or followed up about whether the x-rays he ordered had been taken (see Compl. at 13-14 ("What medical attention rendered was so woefully inadequate as to amount to no treatment at all.")), those alleged missteps do not amount to deliberate indifference. See Warner v. Velardi, No. 16-cv-1924-LAB (DHB), 2018 WL 3853943, at *6 (S.D. Cal. Aug. 14, 2018) (holding that "even assuming . . . [defendant] was negligent by not scheduling plaintiff for an earlier appointment" with doctor, her conduct did not rise to level of deliberate indifference), accepted by 2018 WL 5829972 (S.D. Cal. Nov. 6, 2018); Nam Ba Nguyen v. Cal. Prison Health Serv., No. 2:13-cv-963-MCE-EFB P, 2017 WL 3208718, at *11 (E.D. Cal. July 28, 2017) (finding no deliberate indifference based on delay in processing of plaintiff's x-ray request); see also Gamble, 429 U.S. at 107 ("medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment" and "[a]t most . . . is medical malpractice" properly challenged under state tort law); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." (citation omitted)).

Plaintiff's claim that Defendant was deliberately indifferent to his medical needs boils down to the suggestion that in the weeks and months following the incident Defendant

9

disregarded his repeated complaints that he was still in significant pain and his requests for additional treatment. But he does not allege any facts to permit the inference that Defendant was aware of any of these complaints or requests except one, and his conclusory suggestions to the contrary are belied by the exhibits attached to the Complaint. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (noting that plaintiff can "plead himself out of a claim by including . . . details contrary to his claims"), amended by 275 F.3d 1187 (9th Cir. 2001); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

Plaintiff submitted nine health-care request forms between October 2015 and February 2016: three before x-rays of his foot were taken in December and six after. (See Compl., Ex. F at 42-43, 45-51.) He also addressed complaints about his medical treatment to the prison's "business manager" (id. at 44), the prison's "chief medical officer" (id. at 52), the doctor who in December ordered that x-rays be taken (id. at 53), and the CDCR's Office of Internal Affairs (id. at 40-41). But none of these were addressed to Defendant or so much as mentioned him, and they bear no indication that he reviewed them. Thus, although Plaintiff claims that Defendant was aware of their contents because he "screened" them (Compl. at 12), he nowhere alleges how he knows that to be true.

Plaintiff makes only one specific allegation about informing Defendant of his medical needs: on December 2, 2015, while

10

visiting Defendant to get eyeglasses, Plaintiff told him that he was in severe pain and had not yet had x-rays of his foot taken. (Id. at 4.)  Plaintiff points to Defendant's response — he allegedly told Plaintiff that "you are here for your eyes, I'm not concerned with your foot" and told him to leave (id.) — as proof of Defendant's deliberate indifference.  But just two days after that visit, Plaintiff received the x-rays he had been requesting (id. at 12; id., Ex. D at 30-31), suggesting that Defendant acted on the one complaint that was actually directed to him.  In that light, Plaintiff's allegations likely do not support a claim that Defendant was deliberately indifferent to his medical needs.

Thus, the Complaint's allegations do not support Plaintiff's accusations that Defendant was deliberately indifferent because he "knew the extent of [his] pain" and that "the course of treatment was largely ineffective and still declined to do anything" (Compl. at 12-13; see id. at 8-9, 14, 16) because of "personal hostility" (id. at 13).  Indeed, Plaintiff nowhere alleges any potential basis for Defendant's purported hostility. Without adequate factual support, those conclusory allegations fail to state a colorable Eighth Amendment claim. See Bradford v. Jordan, No. CV 18-6730-SVW (KK), 2018 WL 4961652, at *6 (C.D. Cal. Oct. 12, 2018) (dismissing as conclusory plaintiff's claim that defendant knowingly disregarded his serious medical need); Jackson, 2018 WL 4952596, at *11 (dismissing as conclusory plaintiff's allegation that defendant failed to provide adequate treatment due to "bias[]"); see generally Iqbal, 556 U.S. at 678 (plaintiff must allege more than "sheer possibility" that

11

defendant acted unlawfully).

Accordingly, Plaintiff has not alleged a plausible deliberate-indifference claim against Defendant. Should he wish to pursue an Eighth Amendment claim in an amended pleading, he must allege specific facts showing that Defendant was aware of his medical needs, knew that additional treatment was necessary, and consciously chose to disregard the risk that a delay in treatment would result in further injury.[6]

********************

If Plaintiff desires to pursue any of the claims in the Complaint, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed above. The FAC should bear the docket number assigned

---

[6] Plaintiff is warned that his lawsuit is likely time barred. A deliberate-indifference claim accrues when a plaintiff knew of or had reason to know of a defendant's deliberate indifference. See TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir. 1999). Here, Plaintiff knew of Defendant's alleged deliberate indifference as early as October 2015, when he submitted the first of his written complaints about the medical treatment he was receiving, and no later than December 28, 2015, when he filed his original § 1983 action against Defendant and others on the same grounds raised here. California's statute of limitations for personal-injury claims — the one applicable to § 1983 actions, see Pesnell v. Arsenault, 543 F.3d 1038, 1043 (9th Cir. 2008), abrogated on other grounds by Simmons v. Himmelreich, 136 S. Ct. 1843 (2016) — is two years. Cal. Civ. Proc. Code § 335.1. Because Plaintiff's claim accrued while he was incarcerated, the statute of limitations began running when he was paroled, apparently in Spring 2016. See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (California law tolls the statute of limitations "for a period of up to two years based on the disability of imprisonment" (citing Cal. Civ. Proc. Code § 352.1)). Plaintiff filed this lawsuit on September 4, 2019, however, more than three years after he was paroled and well after the statute of limitations had apparently run. In any amended pleading he files, Plaintiff may want to allege facts, if he is able, demonstrating that the lawsuit is not time barred.

12

to this case, be labeled "First Amended Complaint," and be complete in and of itself, without reference to the Complaint or any other pleading, attachment, or document.  **Plaintiff is warned that if he fails to timely file a sufficient FAC, this action will likely be dismissed on the grounds set forth above and/or for failure to diligently prosecute**.[7]

Plaintiff is advised that he may wish to seek help from one of the federal "pro se" clinics in this District.  The clinics offer free on-site information and guidance to individuals who are representing themselves in federal civil actions.  They are administered by nonprofit law firms, not by the Court.  The clinic closest to Plaintiff is located in Room 1055 of the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Santa Ana, CA 92701.  It is open Tuesdays from 1 to 4 p.m. and Thursdays from 10 a.m. to 12 p.m. and 1:30 to 3:30 p.m.  Useful information is also available on the clinics' website, http://prose.cacd.uscourts.gov/federal-pro-se-clinics.

DATED: November 26, 2019

/s/
JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[7] If Plaintiff believes this order erroneously disposes of any of his claims, he may file objections with the district judge within 20 days of the date of the order. See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015) ("When a magistrate judge believes she is issuing a nondispositive order, she may warn the litigants that, if they disagree and think the matter dispositive, they have the right to file an objection to that determination with the district judge.").